UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM R. DORAZIO,                                  Case No. 2:17-cv-01745-MC

        Petitioner,                                  OPINION AND ORDER

    v.

MR. BOWSER,

        Respondent.

_____

MCSHANE, District Judge:

      Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254, alleging an involuntary *Alford* plea and the ineffective assistance of trial counsel. Respondent argues that petitioner's claims are procedurally defaulted and otherwise lack merit. Based on the record before the court, petitioner fails to establish he is entitled to federal habeas relief. The petition is DENIED.

BACKGROUND

      On June 27, 2013, petitioner was charged with three counts Rape in the First Degree and four counts of Sodomy in the First Degree. Resp't Ex. 102. The charges alleged that between

January 2005 and January 2007, petitioner sexually abused his stepdaughters, DK and KK, who

were under the ages of twelve and sixteen at the time, respectively.

Petitioner eventually waived his right to jury trial and entered *Alford* pleas to Rape in the

First Degree and Rape in the Second Degree as alleged in Counts 2 and 5 (as amended). Resp't

Exs. 102, 103, 118; *see North Carolina v. Alford,* 400 U.S. 25, 37-38 (1970) (holding that a

defendant can enter a valid guilty plea while still maintaining innocence if a factual basis for the

plea exist and the plea is knowing and voluntary). In exchange, the State dismissed the remaining

charges and agreed to a stipulated sentence of 150 months of imprisonment.

At the change of plea hearing, the trial court accepted the following factual basis for the

plea, as recited by the prosecutor:

> Your Honor, Count 2 the State's evidence would be that the victim's name was
> [DK], her date of birth was January 26, 1996. Between January 26, 2005 to
> January 26, 2007 in Klamath County, that she – he knowingly engaged in sexual
> intercourse with her when she was under 12 years of age. Her testimony would be
> that he made her go to bed, after she went to bed he put his penis in her vagina
> and she recalls that it hurt, and this did happen in a house in Klamath Falls. In
> regard to Count 5, testimony would be that [KK] whose date of birth is August
> 30, 1991, she would testify between January 26, 2005 to January 26, 2007 that she
> did unlawfully and knowingly engage in sexual intercourse with the defendant at
> his demand, and at the time that this happened she was under the age of 14, and
> she does remember this happening in the Klamath County apartment houses that
> have subsequently been torn down.

Resp't Ex. 118 at 5-6. The trial court sentenced petitioner in accordance with the parties'

stipulation, and petitioner did not appeal his conviction or sentence. Resp't Exs. 101, 104.

In August 2015, petitioner filed a state court petition for post-conviction relief (PCR) and

alleged various claims of trial court error and ineffective assistance of counsel. Resp't Ex. 106.

Petitioner's PCR counsel eventually submitted a declaration indicating he was unable to identify

a valid claim, and the State moved to dismiss the petition. Resp't Exs. 107, 119. At the hearing

on the State's motion, PCR counsel explained that petitioner's underlying criminal case was not

"triable" because of the evidence against him, including a "pretext" call between petitioner and one the victims:

> He was facing, it wasn't a terribly triable case and wasn't triable at all actually, the victim [DK] had done her own pretext call before coming into the police station. And so she played this to the – to the authorities and then in that call, Mr. Dorazio makes the admission to – when she asks him, "Why did you [you know], were you high or something when you raped me all those times," and then he said, "Yeah."

Resp't Ex. 120 at 3; *see also* Pet'r Ex. F. Further, PCR counsel emphasized that the stipulated 150-month sentence was an "excellent outcome" when the State initially sought a sentence of at least 300 months and petitioner faced a "daunting" sentence of 600 months. Resp't Ex. 119 at 3. Given those facts, PCR counsel believed that petitioner could not show prejudice arising from trial counsel's alleged deficiencies. Resp't Ex. 119 at 3; Resp't Ex. 120 at 3-4. The PCR court granted the State's motion and dismissed the petition. Resp't Exs. 109-110.

Petitioner appealed the dismissal of his PCR petition and requested that the Oregon Court of Appeals assume jurisdiction. Resp't Ex. 112. The Court of Appeals dismissed the appeal for lack of jurisdiction, on grounds that a dismissal for failure to assert a viable PCR claim was not appealable. Resp't Exs. 114, 117.

On November 1, 2017, petitioner filed the instant federal habeas action.

## DISCUSSION

In his federal Petition, petitioner raises seven grounds for relief. *See* Pet. (ECF No. 2). In his supporting brief, however, petitioner presents argument in support of only Grounds Two and Three. *See generally* Pet'r Br. (ECF No. 42). Accordingly, petitioner fails to sustain his burden of establishing entitlement to habeas relief with respect to the unargued claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a habeas petitioner bears the burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

A.  Ground Two: Involuntary Plea

In Ground Two, petitioner alleges that his *Alford* plea was not voluntary because he was pressured by his attorneys and the trial court to enter into a plea. Pet. at 6; *see Brady v. United States,* 397 U.S. 742, 750 (1970) (holding that "a guilty plea obtained through coercion is involuntary").

Respondent maintains that petitioner did not fairly present this claim to the Oregon courts, and, as a result, it is now barred from review through procedural default. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring a state habeas petitioner to exhaust all available state court remedies before a federal court may consider granting habeas relief); *Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991) (if a claim was not fairly presented to the state courts, it is barred through procedural default); *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) ("A procedural default may be *caused* by a failure to exhaust federal claims in state court.").

Petitioner does not dispute that he failed to exhaust his state court remedies for this claim. Rather, petitioner argues that any default should be excused because he presents evidence of actual innocence, his PCR counsel was constitutionally ineffective under *Martinez v. Ryan*, 566 U.S. 1 (2012), and the state corrective process did not permit the vindication of his rights. *See* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing exhaustion where "circumstances exist that render [the available State corrective] process ineffective to protect the rights of the applicant"). Regardless of procedural default, I find that petitioner's claim fails on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

A guilty plea that is not made voluntarily and knowingly violates due process. *Brady*, 397 U.S. at 748 ("Waivers of constitutional rights not only must be voluntary but must be knowing,

intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). The test to determine the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Parke v. Raley,* 506 U.S. 20, 29 (1992) (citation omitted). Statements by a defendant and counsel during a plea hearing, as well as any findings made by the trial court, constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).

    Here, the record contains petitioner's signed plea petition, which indicates petitioner entered his plea "voluntarily, intelligently, and knowingly" and no one "threatened" or "forced" him to enter a plea. Resp't Ex. 103. During the plea hearing, petitioner and the trial court discussed specifics of the plea agreement, including petitioner's requested changes to the language of the indictment, and the trial court confirmed petitioner understood the consequences of entering a plea. Resp't Ex. 118. While petitioner required clarification about the type of plea he intended to enter – whether it was a "no-contest" or *Alford* plea – the record reflects that petitioner understood he was relinquishing his constitutional rights associated with trial and would be sentenced to the stipulated sentence of 150 months. Resp't Ex. 118 at 2-6. Petitioner gave no indication that he felt pressured to enter a plea, and the court and petitioner's counsel were satisfied that petitioner's plea was knowing and voluntary.

    Petitioner emphasizes that the trial court told petitioner, "It's up to you Mr. Dorazio, if you want to sit in the courtroom and listen to that testimony and spend the rest of your life in penitentiary." Resp't Ex. 118 at 6. However, the trial court made this comment in the context of explaining the difference between a no-contest and *Alford* plea and petitioner's insistence that he did not want to enter a plea requiring him to admit guilt. After the court's comment, petitioner

asked, "Well he's telling me it doesn't say guilty, and you're telling me it does say guilty, now which is it?" *Id.* The trial court answered, "Well, [under *Alford*] you will be – you will stand convicted of the crimes, you will stand convicted, but you didn't actually plead guilty," and petitioner declared, "I plead an Alford Plea." *Id.*

This record does not suggest that petitioner was coerced into entering an *Alford* plea. Petitioner did not hesitate to ask questions or raise issues with the trial court, and once petitioner understood he could enter an *Alford* plea without admitting guilt, he freely did so. The fact that petitioner did not like his choices does not render his plea involuntary when the record shows that he made an informed choice "among the alternative courses of action open" to him. *Parke,* 506 U.S. at 29. Accordingly, petitioner fails to show that his plea was not voluntary.

B.  Ground Three: Ineffective Assistance of Counsel

In Ground Three, petitioner alleges that trial counsel rendered ineffective assistance by failing to adequately investigate the case and discover evidence that petitioner did not live in the apartment where some of the abuse involving KK allegedly occurred between January 2005 and January 2007, the time period alleged in the indictment. To support this claim, petitioner presents records from a utilities company confirming that the utility bill for the apartment was not in petitioner's name during that time. Pet'r Brief Ex. C. Petitioner maintains that counsel's failure to investigate and obtain this information was unreasonable and caused him prejudice.[1]

Under well-established Supreme Court precedent, a habeas petitioner alleging ineffective assistance of counsel must show that 1) "counsel's performance was deficient," and 2) counsel's

---

[1] Petitioner maintains that this evidence also proves he is "actually innocent" of the charges and excuses any procedural default. Regardless of default, evidence that petitioner might not have lived at the apartment during the time alleged in the indictment does not establish factual innocence. *Jaramillo v. Stewart,* 340 F.3d 877, 882 (9th Cir. 2003) ("'actual innocence' means factual innocence, not mere legal insufficiency").

"deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where, as here, "the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence," whether the error caused prejudice "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Even if counsel's investigation was deficient, petitioner fails to establish prejudice. Petitioner does not show that he would have rejected the plea agreement and insisted on a trial, even if trial counsel had investigated and discovered the utility records or similar evidence. *See Premo v. Moore*, 562 U.S. 115, 130 (2011) (emphasizing that the issue is not whether the petitioner believed he still would have been convicted if not for counsel's errors, but whether the petitioner "established the reasonable probability that he would not have entered his plea but for his counsel's deficiency"). As petitioner admits, the so-called exculpatory evidence regarding the apartment would have shown, at most, "that half the accusations could not have occurred where and when alleged." Pet'r Br. at 1. This evidence would not have affected Counts 1 through 4, the offenses involving DK, or the pretext telephone call DK recorded. During that telephone conversation, DK asked, "When you molested me and raped me, were you on drugs or [were] you sober?" Petitioner responded, "No, I was totally fucked up every time, you watched me do it." Pet'r Ex. F at 10.

In light of evidence against him and the sentencing exposure he faced, petitioner fails to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. Accordingly, petitioner fails to establish that his counsel rendered ineffective assistance and he is not entitled to federal habeas relief.

<u>CONCLUSION</u>

The Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED and this case is DISMISSED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 28th day of April, 2020.

s/  Michael J. McShane
Michael J. McShane
United States District Judge